1

2

3

4

5

6

7

8

9

10

11

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

12    RONALD W. COLLINS,         )

13             Petitioner,      )      3: 04-cv-0298-RCJ-VPC

                                )

14    vs.                                )

                                )      **ORDER**

15    ELDON K. McDANIEL, *et al.,*    )

                                )

16             Respondents.    )

                                /

17

18        This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in which petitioner, a

19   state prisoner, is represented by counsel. The case is before the court for resolution on the merits.

20                                    **PROCEDURAL HISTORY**

21        Following a trial in the Nevada Eighth District Court, petitioner was found guilty of first degree

22   murder with the use of a deadly weapon. On October 19, 2000, the court sentenced him to serve a

23   prison term of life with the possibility of parole with a minimum parole eligibility of 20 years, plus an

24   equal and consecutive term of life with the possibility of parole for the use of a deadly weapon with a

25   minimum eligibility of 20 years. (Docket #20, Exhibits 35, 36.)   The court entered judgment on

26   October 25, 2000. (Docket #20, Exhibit 36.)

Petitioner filed a direct appeal from his conviction.  (Docket # 20, Exhibit 45.)  On May 10, 2002, the Nevada Supreme Court issued an order of affirmance.  (Docket 20, Exhibit #49.)

On December 5, 2002, petitioner filed a *pro se* petition for writ of habeas corpus.  (Docket #20, Exhibit 58.)  On April 1, 2004, the district court entered findings of fact, conclusions of law and an order denying the petition.  (Docket #20, Exhibit 67.)  Petitioner appealed and the Nevada Supreme Court issued an order of affirmance on April 14, 2004.  (Docket #20, Exhibit 76.)

On November 5, 2003, petitioner filed a motion to correct an illegal sentence.  (Docket #20, Exhibit 71.)  The district court denied the motion in an order entered November 25, 2003.  (Docket #20, Exhibit 73.)  Petitioner filed an appeal from the denial of his motion, and the Nevada Supreme Court issued an order of affirmance on June 3, 2004.  (Docket #20, Exhibit 78.)

This court received the present petition for writ of habeas corpus on June 7, 2004.  (Docket #1.)  The court appointed counsel and petitioner filed an amended petition on February 11, 2005.  (Docket #17.)  Respondents filed a motion to dismiss on March 28, 2005, which petitioner opposed.  (Docket #24, #27.)  This court found that grounds 1, 3(A), 4, 9(A)(3), and 9(C)(2) of the amended petition were not exhausted and that grounds 9(A)(1) and (2) were only partially exhausted.  (Docket #32.)  The court granted petitioner an opportunity to decide how to proceed and on June 12, 2006, petitioner filed a motion for a stay in order to exhaust his unexhausted claims.  (Docket #35.)  The court granted petitioner's motion for a stay of the case on July 19, 2006.  (Docket #37.)

On September 11, 2006, petitioner filed a petition for writ of habeas corpus in district court.  (Docket #41, Exhibits 87-89.)  The district court denied the petition, entering findings of fact, conclusions of law and an order on November 29, 2006.  (Docket #41, Exhibits 97-98.)  Petitioner appealed and the Nevada Supreme Court issued an order of affirmance on May 22, 2007.  (Docket #41, Exhibit 112.)

The court granted  petitioner's motion to reopen the present case on October 11, 2007.  (Docket #39.)  On November 21, 2007, petitioner filed a second amended petition, to which respondents filed a motion to dismiss on January 23, 2008.  (Docket #40, #43.)  On May 1, 2008, the court entered an

1   order partially granting respondents' motion to dismiss.  (Docket #45.)  The court dismissed grounds

2   1, 3(A), 4, part of ground 9(A)(1), part of ground 9(A)(2), ground 9(a)(3), and ground 9(C)(2) with

3   prejudice based on procedural default.  *Id.*

4          On July 1, 2008, respondent filed an answer to the second amended petition.  (Docket # 46.)  On

5   December 1, 2008, petitioner filed a reply to the answer.  (Docket #51.)

6                                **LEGAL STANDARDS**

7          On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996

8   ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  *Lindh v.*

9   *Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997);

10   *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769

11   (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by Lindh*

12   *v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after

13   statute's enactment).  The instant petition was filed after the enactment of the AEDPA, thus it is

14   governed by its provisions.

15          This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody

16   pursuant to the judgment of a State court only on the ground that he is in custody in violation of the

17   Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

18          The AEDPA altered the standard of review that a federal habeas court must apply with respect

19   to a state prisoner's claim that was adjudicated on the merits in state court. *Williams v. Taylor*, 120 S.Ct.

20   1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus will not be granted unless

21   the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable

22   application of, clearly established Federal law, as determined by the Supreme Court of the United

23   States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light

24   of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 123

25   S.Ct. 1166, 1173 (2003) (disapproving of the Ninth Circuit's approach in *Van Tran v. Lindsey*, 212 F.3d

26   1143 (9th Cir. 2000)); *Williams v. Taylor*, 120 S.Ct. 1495, 1523 (2000).  "A federal habeas court may

1   not issue the writ simply because that court concludes in its independent judgment that the relevant

2   state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer*, at 1174

3   (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

4          While habeas corpus relief is an important instrument to assure that individuals are

5   constitutionally protected, *Barefoot v. Estelle*, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983);

6   *Harris v. Nelson*, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction

7   is the primary method for a petitioner to challenge that conviction. *Brecht v. Abrahamson*, 507 U.S.

8   619, 633, 113 S.Ct. 1710, 1719 (1993). In addition, the state court's factual determinations must be

9   presumed correct, and the federal court must accept all factual findings made by the state court unless

10  the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C.

11  § 2254(e)(1); *Purkett v. Elem*, 514 U.S. 765, 115 S.Ct. 1769 (1995); *Thompson v. Keohane*, 516 U.S.

12  99, 116 S.Ct. 457 (1995); *Langford v. Day*, 110 F.3d 1380, 1388 (9th Cir. 1997).

13                                  **DISCUSSION**

14  Ground Two

15         In ground two petitioner contends that the prosecutor improperly questioned defense witness Dr.

16  Mortillaro and thereby violated petitioner's due process rights under the Fifth, Sixth and Fourteen

17  Amendments to the United States Constitution. Petitioner argues the prosecutor's question was a

18  comment on petitioner's silence, as it implied that petitioner had not spoken to the police about being

19  attacked at the time of his arrest. Petitioner also argues that the question implied that petitioner had

20  fabricated the story of his attack on the witness stand. Petitioner claims that this was a violation of his

21  rights to remain silent and to not have that right used against him. *See Miranda v. Arizona*, 384 U.S.

22  436 (1966). Respondents dispute this contention.

23         The exchange in question was as follows:

24  Mr. Kane (prosecutor):  Doctor, would it surprise you if I told you that I have read every word

25         of every police report in this case and memorized most of them, and there is no mention in the

26         police reports, because no one on the face of the earth that I know of heard it before an hour ago,

1    that this defendant was attacked by someone else in the parking lot of a bar -

2    Mr. Sciscento (defense): Your Honor, I'm going - -

3    Mr. Kane:  - -  in North Las Vegas.

4    Mr. Sciscento: Your, Honor, I'm gonna object to that.  I  - -

5    Mr. Kane:   Would that surprise you?

6    Mr.  Sciscento: Your Honor, I'm gonna object to that.

7    The Court:   Just a minute.  There's an objection.

8    Mr. Sciscento:   Maybe (sic) approach on this matter?

9  (Docket #19, Exhibit 28, p. 276-77.)  After the side bar conference, the district court instructed the jury

10 to "disregard that question," and ordered the state to proceed.  *Id.*

11     The Nevada Supreme Court addressed this contention as follows in petitioner's direct appeal:

12        Collins next asserts that when the prosecutor cross-examined Collins, he improperly
           commented on Collins' post-arrest silence.  Even assuming the comment was improper, we
13         conclude that any prejudice that may have resulted was cured by the district court's admonition
           to the jury. [Footnote omitted.]
14

15 (Docket #20, Exhibit 49, p. 2.)

16     The Fifth Amendment right to remain silent contains an implicit assurance "that silence will

17 carry no penalty." *Doyle v. Ohio*, 426 U.S. 610, 618, 96 S.Ct. 2240(1976). "[I]t would be fundamentally

18 unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an

19 explanation subsequently offered at trial." Id. (footnote reference omitted).  It is clearly established law

20 in this circuit that violations of the right to post-arrest silence are amenable to post-arrest silence.

21 *United States v. Lopez*, 500 F.3d 840 (9th Cir. 2007).   A federal court  reviewing a state court ruling of

22 harmless error must review for objective unreasonableness.  *See Medina v. Hornug*, 386 F.3d 872, 878

23 (2004) (upholding state court decision that applied a state law harmless error standard that comported

24 with federal law.)

25     After reviewing petitioner's arguments, the court finds that petitioner has not shown that the

26 district court's finding that any prejudice was cured by the trial court's admonition to the jury was

5

objectively unreasonable.  This court concludes that petitioner has failed to carry his burden of demonstrating that the Nevada Supreme Court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).  The court concludes, therefore, that ground 2 provides no basis for habeas corpus relief.

Ground 3B

In ground 3B, petitioner claims that the prosecutor improperly argued  in closing argument that the serrated knife was from petitioner's home when there was no evidence to support his argument.  He argues that although he admitted that the hunting knives belonged to him, there was no evidence that the serrated knife belonged to him and came from his house. Petitioner claims that the prosecutor's comments could only have led the jury to believe that the prosecutor had superior knowledge that he was not allowed to share, and that he was exhorting the jury to rely upon his expertise, rather than objectively weighing the evidence. Respondents dispute this contention.

A habeas petition will be granted for prosecutorial misconduct only when the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 171, 106 S.Ct. 2464 (1986) (*quoting Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871 (1974)); *see, Bonin v. Calderon*, 59 F.3d 815, 843 (9th Cir. 1995).  To constitute a due process violation, the prosecutorial misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial." *Greer v. Miller*, 485 U.S. 756, 765, 107 S.Ct. 3102, 3109 (1987) (*quoting United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375 (1985)). Under this standard, a petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial - i.e., that absent the alleged impropriety, the verdict probably would have been different.  A prosecutor may make inferences during closing argument that is based on the

1    evidence in the record; however, he cannot misstate or exceed the evidence in any significant respect.

2    *United States v. Marques*, 600 F.2d 742, 749 (9th Cir. 1979).

3           The law on insufficiency of the evidence claim is clearly established.  The United States

4    Supreme Court has held that when reviewing an insufficiency of the evidence claim on habeas, a federal

5    court must determine whether, viewing the evidence and the inferences to be drawn from it in the light

6    most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime

7    beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  Sufficiency claims are

8    judged by the elements defined by state law.  *Id*. at 324 n. 16.

9           In addressing this issue on direct appeal, the Nevada Supreme Court held as follows:

10                  While acknowledging his failure to object, Collins next contends that the district court
       committed plain error by failing to cure instances of prosecutor misconduct. [Footnote omitted.]
11     Specifically, Collins directs our attention to three instances from the prosecutor's closing
       argument in which Collins argues that the prosecutor impermissibly stated his opinion,
12     improperly argued to the jury that Collins was a liar, and impermissibly argued matters not
       support by evidence.  We conclude that even if there was any prosecutorial misconduct, it was
13     insufficient to amount to reversible plain error.  [Footnote omitted.]

14   (Docket #20, Exhibit 49, p. 3.)  Additionally, in addressing petitioner's claim on direct appeal of

15   insufficiency of evidence, the Nevada Supreme Court found that, "[t]he State presented evidence that

16   several knives from Collins' kitchen were found in his truck.  Correspondingly, two witnesses testified

17   that the knife that killed Agnes Ready looked like a kitchen knife."  *Id*. at 3 -4.

18          Based on the above, the court rejects petitioner's claim that "there was not a scintilla of evidence

19   that the serrated knife belonged to Collins and came from his home."  Further, a thorough review of the

20   record convinces the court that the prosecutor's comment was neither dispositive nor an incorrect

21   statement of the evidence.  The court thus finds that petitioner has failed to carry his burden of

22   demonstrating that the Nevada Supreme Court's adjudication of the prosecutorial misconduct claim

23   "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

24   established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a

25   decision that was based on an unreasonable determination of the facts in light of the evidence presented

26

7

1  in the State Court proceeding." 28 U.S.C. § 2254(d).  Ground 3B thus provides no basis for habeas

2  corpus relief.

3  Ground Five

4      In ground five petitioner contends that the district court's reasonable doubt instruction

5  improperly minimized the state's burden of proof, thereby violating petitioner's due process rights

6  guaranteed by the Fifth, Sixth and Fourteenth Amendments.  Respondents dispute this contention.

7      In addressing petitioner's contention regarding the reasonable doubt instruction on direct appeal,

8  the Nevada Supreme Court held, "we have previously addressed the constitutionality of Nevada's

9  statutory instruction on reasonable doubt, the instruction given here, and we have consistently held that

10  it meets constitutional standards. [Footnote omitted.] Thus, we conclude that Collins' jury instruction

11  challenges lack merit."  (Docket #20, Exhibit 49, p. 5.)

12      The reasonable doubt instruction given in this case is constitutional under controlling federal

13  authority.  *See Ramirez v. Hatcher*, 133 F.3d 1209 (9th Cir. 1998) (holding that an identical instruction

14  was constitutional).  The court thus finds that petitioner has failed to carry his burden of demonstrating

15  that the Nevada Supreme Court's adjudication of the prosecutorial misconduct claim "resulted in a

16  decision that was contrary to, or involved an unreasonable application of, clearly established Federal

17  law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based

18  on an unreasonable determination of the facts in light of the evidence presented in the State Court

19  proceeding." 28 U.S.C. § 2254(d).  The court finds, therefore, that ground five provides no basis for

20  habeas corpus relief.

21  Ground Six

22      In ground six, petitioner contends that the district court's jury instruction defined "malice"

23  improperly and allowed the jury to presume malice without proof beyond a reasonable doubt, thereby

24  violating petitioner's due process rights under the fifth, sixth and fourteenth amendments to the United

25  States Constitution.  Specifically, petitioner claims that the district court gave a jury instruction on

26  implied malice at petitioner's trial that created an improper presumption in violation of NRS 47.230 and

8

1   therefore violated petitioner's right to due process.  He claims that the district court failed to instruct the

2   jury that the presumption of malice was not binding and must be proved beyond a reasonable doubt upon

3   consideration of all the evidence.  Respondents dispute this contention.

4       Petitioner raised this issue on direct appeal, where it was rejected.  The Nevada Supreme Court

5   held, "we recently addressed the constitutionality of the same malice instruction in <u>Leonard v. State</u> [117

6   Nev. 53, 17 P.3d 397 (Nev. 2001)], in which we rejected similar arguments made by Collins and

7   concluded, "[T]he malice instructions as a whole are sufficient."   (Docket #20, Exhibit 49, p. 5.)  In

8   *Leonard*, 117 Nev. at 79, 17 P.3d at 413, the Nevada Supreme Court explained:

9               However, the statutory language is well established in Nevada, and we conclude that the
10      malice instructions as a whole were sufficient. This court has characterized the statutory
        language "abandoned and malignant heart" as "archaic but essential." Keys v. State, 104 Nev.
        736, 740, 766 P.2d 270, 272 (1988). This court held that similar instructions "accurately
11      informed the jury of the distinction between express malice and implied malice." Guy v. State,
        108 Nev. 770, 777 & n. 2, 839 P.2d 578, 582-83 & n. 2 (1992). Further, this court has held that
12      language in the malice aforethought instruction is constitutional that refers to "a heart fatally
        bent on mischief" and acts done "in contradistinction to accident or mischance." See Leonard,
13      114 Nev. at 1208, 969 P.2d at 296. This court concluded that "[a]lthough these phrases are not
        common in today's general parlance, ... their use did not deprive appellant of a fair trial." Id.
14      Absent some indication that the jury was confused by the malice instructions (including the
        instruction on malice aforethought and express malice), a defendant's claim that the instructions
15      were confusing is merely "speculative." See Guy, 108 Nev. at 777, 839 P.2d at 583. Leonard has
        not shown that the jury was confused in the instant case.

16

17      A challenge to a jury instruction solely as an error under state law does not state a claim

18   cognizable in a federal habeas corpus action.  *See, Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991).  To

19   obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing

20   instruction by itself so infected the entire trial that the resulting conviction violates due process.  *See,*

21   *id.* at 72.  Additionally, the instruction may not be judged in artificial isolation, but must be considered

22   in the context of the instructions as a whole and the trial record.  *Id.*  The court must evaluate jury

23   instructions in the context of the overall charge to the jury as a component of the entire trial process.

24   *See, United States v. Frady*, 456 U.S. 152, 169 (1982) (*citing Henderson v. Kibbe*,  431 U.S. 145, 154

25   (1977)).

26

9

1    The court finds that petitioner's argument addresses the malice instruction in isolation

2    and, as respondents argue, ignores the instruction given which required the State to prove each and every

3    element of the charged crimes beyond a reasonable doubt.  After thoroughly reviewing the arguments

4    of the parties and the record, the court concludes that petitioner has failed to carry his burden

5    demonstrating that the Nevada Supreme Court's decision that the malice instructions as a whole were

6    sufficient was contrary to, or involved an unreasonable application of, clearly established Federal law,

7    as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on

8    an unreasonable determination of the facts in light of the evidence presented in the State Court

9    proceeding." 28 U.S.C. § 2254(d).  The court therefore concludes that ground six provides no basis for

10   habeas corpus relief.

11   Ground Seven

12   In ground seven petitioner claims that he is in custody in violation of his right to due process

13   under the fifth and fourteenth amendments because the evidence adduced at trial was insufficient to

14   prove murder in the first degree beyond a reasonable doubt.  Respondents dispute this contention.

15   Petitioner raised this contention on direct appeal and the Nevada Supreme Court rejected it,

16   finding as follows:

17           Collins next challenges the sufficiency of evidence that supports his conviction.
18   His specific concern is that there was insufficient evidence of deliberation, pointing to
     the chaotic nature of his house, and Dr. Mortillaro's testimony that Collins' ability to
     make decisions was impaired because of Collins' head injury and the consumption of
19   alcohol.  The State presented evidence that several knives from Collins' kitchen were
     found in his truck.  Correspondingly, two witnesses testified that the knife that killed
20   Agnes Ready looked like a kitchen knife.  Also, there was blood and fingerprint evidence
     found in Collins' truck.  Based on this, we conclude that after viewing the evidence in
21   the light most favorable to the prosecution and even though the evidence was
     circumstantial, there was sufficient evidence of deliberation to sustain Collins'
22   conviction. [Footnote omitted.]  Although Collins presented expert testimony that his
     ability to make decisions was impaired, we note that the jury was entitled to reject this
23   theory and draw the conclusion that Collins had the ability to deliberate first-degree
     murder.

24

25   (Docket #20, Exhibit 49, p. 3.)  The district court expressly cited the *Jackson* standard, set for above,

26   for sufficiency of the evidence.  As the district found, petitioner's recitation of the evidence and

arguments in his favor does not preclude the finding that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.   After reviewing the record and the parties' arguments, this court finds that respondents have failed to carry their burden demonstrating that the Nevada Supreme Court's decision that the malice instructions as a whole were sufficient was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).  The court therefore concludes that ground seven provides no basis for habeas corpus relief.

Ground Eight

In ground eight, petitioner contends that the cumulative error set forth in his contentions on direct appeal, state habeas corpus proceedings, and in the present petition severely prejudiced him, deprived him of a fair trial, and rendered his convictions unreliable.   Respondents dispute this contention.

The Nevada Supreme Court rejected this contention on direct appeal and in its April 14, 2004 opinion denying petitioner's appeal from the denial of his petition for writ of habeas corpus, finding that it lacked merit.  This court must agree, as petitioner has not demonstrated error.

This court finds that petitioner has failed to carry his burden on this contention under 28 U.S.C. § 2254(d).  The court therefore concludes that ground eight provides no basis for habeas corpus relief.

Ground Nine

In ground nine, petitioner contends that he received ineffective assistance of trial counsel in violation of the Sixth and Fourteen Amendments.  Respondents dispute this contention.

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  *Canales v. Roe*, 151 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064

11

1   (1984); *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that counsel's

2   performance was deficient, requiring a showing that counsel made errors so serious that he or she was

3   not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687.  The

4   petitioner must show that counsel's representation fell below an objective standard of reasonableness,

5   and must identify counsel's alleged acts or omissions that were not the result of reasonable professional

6   judgment considering the circumstances. *Id*. at 688; *United States v. Quintero-Barraza*, 78 F.3d 1344,

7   1348 (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential.  A court indulges

8   a strong presumption that counsel's conduct falls within the wide range of reasonable professional

9   assistance.  *Strickland*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); *Sanders v. Ratelle*, 21 F.3d

10  1446, 1456 (9th Cir.1994).

11      Second, the petitioner must demonstrate that "there is a reasonable probability that, but for

12  counsel's unprofessional errors, the result ... would have been different," 466 U.S., at 694. Petitioner

13  must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result

14  is reliable.  *Strickland*, 466 U.S. at 688.  The court must evaluate whether the entire trial was

15  fundamentally unfair or unreliable because of counsel's ineffectiveness. *Id.; Quintero-Barraza*, 78 F.3d

16  at 1345; *United States v. Palomba*, 31 F.3d 1356, 1461 (9th Cir. 1994).

17      A court need not determine whether counsel's performance was deficient before examining the

18  prejudice suffered by the petitioner as a result of the alleged deficiencies.  *Strickland*, 466 U.S. 668, 697,

19  104 S.Ct. 2052, 2074 (1984).  Since the defendant must affirmatively prove prejudice, any deficiency

20  that does not result in prejudice must necessarily fail. However, there are certain instances which are

21  legally presumed to result in prejudice, e.g., where there has been an actual or constructive denial of the

22  assistance of counsel or where the State has interfered with counsel's assistance. *See Strickland*, 466

23  U.S. at 692; *United States v. Cronic*, 466 U.S., at 659, and n. 25, 104 S.Ct., at 2046-2047, and n. 25

24  (1984).

25      Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong

26  of *Williams v. Taylor*, 529 U.S. 362 (2000).  *Weighall v. Middle*, 215 F.3d 1058, 1062 (2000). "Under

1   the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court

2   identifies the correct governing legal principle from [United States Supreme Court] decisions but

3   unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.  The

4   habeas corpus applicant bears the burden to show that the state court applied United States Supreme

5   Court precedent in an objectively unreasonable manner.  *Price v. Vincent*, 538 U.S. 634, 640 (2003).

6          In subsection (A) of ground 9, petitioner contends that trial counsel failed to adequately

7   investigate petitioner's case.  In the portion of ground 9(A)(1) not previously dismissed by this court

8   on the basis of procedural default, petitioner alleges that counsel was ineffective for failing to investigate

9   witnesses who knew or may have seen the victim, Agnes Ready, in the neighborhood.  In the portion

10  of ground 9(A)(2) not previously dismissed by this court on the basis of procedural default, petitioner

11  contends that counsel was ineffective for failing to do the following: (a) canvass for surveillance videos

12  at the El Cortez and convenience store (but not the Elks Club); (b) conduct a search for potential

13  witnesses by showing a booking photo of Ready to persons residing nearby and patrons and employees

14  of the El Cortez, Elks Club, convenience store, and the adjacent RV area (but not to Collins' coworkers);

15  and (c) canvass employees and patrons of the Elks Club and the RV area as to whether the Elks Club

16  property had suffered recent damage to any structures (but not to whether anyone had heard or seen

17  something on the night of the incident).

18         In addressing these claims in the April 14, 2004 order affirming the denial of petitioner's petition

19  for post-conviction relief, the Nevada Supreme Court held as follows:

20         Trial counsel has an obligation to conduct a reasonable investigation or make a
           determination that a particular investigation is unnecessary. (Footnote omitted.)  Here,
21         however, we note that Collins' trips to the casino, the convenience store, and the Elks
           Bar occurred prior to the victim's murder.  Collins did not establish that surveillance
22         videotapes existed and that witnesses were available, nor did he demonstrate that the
           videotapes and witnesses would have provided exculpatory evidence.  (Footnote
23         omitted.)  As such, Collins failed to show that the result of the trial would have been
           different. (Footnote omitted.) Therefore, Collins failed to demonstrate that counsel was
24         ineffective on this issued.

25  (Docket #20, Exhibit 76, p.3.)

26

13

1        In subsection (B) of ground nine, petitioner contends that counsel was ineffective for failing to

2   interview or call key witnesses in support of his defense.   Specifically, he argues that counsel was

3   ineffective for failing to interview his neighbor Blaireen Knouf, friends Alan Schilde and Jason Piper,

4   and  neighbor Michael Roche.

5        In addressing this contention, the Nevada Supreme Court held as follows:

6            Collins contended that trial counsel was ineffective for failing to investigate character
        and interview Blaireen "Nicki" Knouf.  Collins claimed that Knouf's testimony would have
7        support his claim that he had gone to the El Cortez to visit neighbors.  However, even if his
        claim were true, Collins failed to address how this testimony would have changed the result of
8        the trial. (Footnote omitted.) Therefore, Collins failed to demonstrate that counsel was
        ineffective on this issue.
9            Eighth, Collins contends that trial counsel was ineffective for failing to investigate
        Michael Roche.  Collins claimed that Roche's testimony would have rebutted a prosecution
10       witness' testimony that there was a disturbance at the Collins residence before the arrival of the
        police. However, even if his claim were true, Collins failed to address how this testimony would
11       have changed the result of the trial. (Footnote omitted.) Therefore, Collins failed to demonstrate
        that counsel was ineffective on this issue. . . .
12           Tenth, Collins contended that trial counsel was ineffective for failing to investigate Alan
        Schilde and Jason Piper.  Collins argued that Schilde and Piper would have testified that the
13       three ornamental knives were in Collins' truck prior to the night of the murder.  Collins claimed
        that this testimony "would have bolstered his testimony that he did not take the knives to go
14       hunting for a victim." However, even if his claim were true, Collins failed to address how this
        testimony would have changed the result of the trial.  (Footnote omitted.)  Therefore, Collins
15       failed to demonstrate that counsel was ineffective on this issue.

16   (Docket #20, Exhibit 76, p. 5 - 7.)

17       In subsection (C) of ground 9, petitioner contends that trial counsel was ineffective for failing

18   to obtain expert witnesses.  In the portions of ground 9(C) not previously dismissed by this court on the

19   basis of procedural default, petitioner alleges that counsel was ineffective for not obtaining a toolmark

20   expert or forensic pathologist to compare the victim's wounds to the knives found in petitioner's truck.

21       In rejecting this contention, the Nevada Supreme Court held as follows:

22           Eleventh, Collins contended that trial counsel was ineffective for failing to obtain an
        expert to examine the victim's wounds and determine whether a serrated-edged or straight-edged
23       knife made the incisions.  Collins argued that such a determination would have supported his
        pre-trial motion to suppress the admission of the straight-edged knives as being prejudicial.
24       However, Collins' pre-trial motion did not address the knives found at the murder scene, which
        evidently included the murder weapon.  Instead, the motion addressed knives that were found
25       by the police inside Collins' residence.  The district court concluded that these knives were
        admissible to establish that the police conducted a proper investigation and "to support arguable
26       inferences dealing with the defendant's state of mind and intent."   Because expert opinion
        regarding the nature of the victim's knife wounds was not relevant to Collins' pre-trial motion,

1  trial counsel was not deficient for failing to obtain an expert to examine the victim's wounds.
2  Therefore, Collins failed to demonstrate that counsel was ineffective on this issue.

3  (Docket #20, Exhibit 76, p. 7-8.)

4  In subsection (D) of ground 9, petitioner contends that trial counsel was ineffective for failing

5  to adequately prepare for trial, thereby allowing the prosecution to present harmful and highly

6  prejudicial evidence to the jury. Specifically, petitioner claims that counsel failed to: (a) adequately

7  investigate for petitioner's direct examination testimony regarding his prior felony convictions; and (b)

8  adequately investigate and prepare for the direct examination of Dr. Jennings, an emergency room

9  physician who treated petitioner's head injury. The Nevada Supreme Court held:

10  Sixteenth, Collins contended that trial counsel was ineffective for offering into evidence
   the medical report of Dr. Jennings. Collins argued that the medical report contained prejudicial
11  and contradictory evidence against [sic] how Collins received the head wound. Based on our
   review of the record on appeal, we conclude that trial counsel's decision to offer Dr. Jennings'
12  medical report into evidence was a tactical decision. Because Collins did not present any
   extraordinary circumstances, trial counsel's decision cannot be successfully challenged.
13  (Footnote omitted.) Therefore, Collins failed to demonstrate that counsel was ineffective on this
   issue.
14

15  (Docket #20, Exhibit 76, p. 10.)

16  Fifth, Collins contended that trial counsel was ineffective for failing to investigate the
   facts surrounding his prior felony convictions, and for opening the door for the prosecution to
17  question him about the facts of these convictions. Our review of the record on appeal reveals
   that the prosecution questioned Collins about his felony conviction for "endangerment." On
18  cross-examination, Collins admitted that he was arrested for assault with a deadly weapon and
   testified that he told his trial counsel he was drag racing. Trial counsel was not ineffective for
19  determining that investigation of Collins' prior felony convictions was unnecessary after Collins
   informed him of their existence and basis. (Footnote omitted.) Trial counsel's decision to
20  question Collins about the convictions on direct examination was a tactical decision. Because
   Collins did not present any extraordinary circumstances, trial counsel's decision cannot be
21  successfully challenged. Therefore, Collins failed to demonstrate that counsel was ineffective
   on this issue.
22

23  (Docket #20, Exhibit 76, p. 10.)

24  In subsection (E), petitioner contends that counsel failed to object to improper jury instructions.

25  He argues that counsel failed to object to the district court's instruction on premeditation and on malice.

26  The Nevada Supreme Court rejected this contention, holding as follows:

15

1

2

3

4

      Eighteenth, Collins contended that trial counsel was ineffective for failing to object to the jury instruction addressing reasonable doubt, premeditation, and malice. However, this court reviewed these jury instructions on direct appeal.  We concluded that the district court did not abuse its discretion in giving its premeditation instruction and that the reasonable doubt and malice instructions were constitutional.  As such, trial counsel was not deficient for failing to object to these jury instructions.  Therefore, Collins failed to demonstrate that counsel was ineffective on this issue.

5

(Docket #20, Exhibit 76, p. 11.)

6

7

8

9

10

11

12

13

14

      In subsection (F), petitioner contends that counsel failed to object to prosecutorial misconduct during closing arguments.  He claims that counsel failed to object to the prosecutor's disparaging statements that petitioner is a liar, and to his repeated statements that the serrated knife belonged to petitioner.  Petitioner did not raise this contention in his first habeas corpus proceeding, in which his other ineffectiveness contentions were raised.  However, the Nevada Supreme Court held on direct appeal that, "even if there was any prosecutorial misconduct, it was insufficient to amount to reversible plain error."  (Docket 20, Exhibit #49, p. 3.)  This court therefore finds that petitioner cannot demonstrate prejudice so as to support a contention of ineffective assistance of counsel based on these claims.

15

16

17

18

19

20

21

22

23

      After reviewing all of petitioner's claims supporting his contention that he received ineffective assistance of counsel, the court finds that petitioner has failed meet his burden of showing that the Nevada Supreme Court's resolution of the contention  "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).  As respondents argue, petitioner suggests various avenues that counsel could have taken, but fails to show how counsel's decisions not to pursue them resulted in prejudice to petitioner.

. . .

24

25

26

1

**CONCLUSION**

2          **IT IS THEREFORE ORDERED** that the petition for writ of habeas corpus is **DENIED.**  The

3   clerk of the court is directed to enter judgment for respondents and to close this case.

4

5          DATED this 17th day of September, 2009.

6

7          _____

8          UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26